UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FRISCHHERTZ ELECTRIC CO.,                         CIVIL ACTION

VERSUS                                            NO. 17-13739

MERCHANTS BONDING CO.,                            SECTION "B"(5)

ORDER AND REASONS

Before the Court is Defendant Merchants Bonding Company's ("Defendant Merchants") "Motion to Dismiss for Failure to State a Claim" (Rec. Doc. 6), Plaintiff Frischhertz Electric Company's ("Plaintiff") Response in Opposition (Rec. Doc. 8), and Defendant Merchant's Reply (Rec. Doc. 14). For the reasons discussed below,

**IT IS ORDERED** that the Motion to Dismiss (Rec. Doc. 6) is hereby **DENIED** insofar as it seeks to dismiss Counts 2, 6, 7, 8 and 9 of Plaintiff's Complaint.

**IT IS FURTHER ORDERED** that the Motion to Dismiss is **GRANTED** insofar as it seeks to **DISMISS Counts 3, 4, and 5** of Plaintiff's Complaint.

**FACTS AND PROCEDURAL HISTORY**

This case originates from a September 2016 consult between Plaintiff and Eustis Insurance, Inc. ("Eustis"). Rec. Docs. 1 and 6. The purpose of the consult was for the possibility of Eustis submitting a surety-bond application on behalf of Plaintiff. Rec. Doc. 1 at 2. On account of the consult, Plaintiff alleges that it

1

shared with Eustis, "sensitive confidential and proprietary financial documentation" that included "detailed financial statements, asset and liability statements, revenue and expense statements, cash flow statements and tax related data" (hereinafter the "Frischhertz Documentation"). *Id*. Thereafter, Eustis submitted the Frischhertz Documentation to Defendant Merchants in a surety application made on Plaintiff's behalf. Rec. Docs. 1 and 6-5. According to Plaintiff's Complaint, "at all times Frischhertz [Plaintiff] was under the understanding and belief that the financial documentation provided to Eustis Insurance would remain confidential and proprietary." Rec. Doc. 1 at 2.

Plaintiff alleges that between October 9, 2016 and October 12, 2016, Defendant Merchants disseminated confidential and proprietary information contained in the Frischhertz Documentation as part of a training session conducted by Defendant Merchants in Des Moines, Iowa (the "Training"). Rec. Doc. 1 at 3. The Training session allegedly included "approximately 50 trainees with over 25 different surety companies, agencies, reinsurers and outside lawyers." *Id*.

Plaintiff alleges that shortly after receiving notice of Defendant Merchants' use of Plaintiff's information, Plaintiff sent Defendant Merchants a demand letter. Rec. Doc. 8-1. On November 15, 2017, Defendant Merchants responded saying that it would investigate the matter. Rec. Doc. 8-2. On November 30, 2017,

Plaintiff filed a complaint containing nine (9) causes of action against Defendant Merchants for the above-mentioned dissemination of the Frischhertz Documentation. Rec. Doc. 1. Plaintiff alleges: 1) negligence/breach of privacy; 2) violation of Louisiana Unfair Trade Practices and Consumer Protection Law ("LUPTA"); 3) negligent misrepresentation; 4) negligent hiring; 5) breach of duty of reasonable care, diligence, and judgment under Iowa law; 6) misappropriation under the Iowa Uniform Trade Secrets Act; 7) misappropriation under the Texas Uniform Trade Secrets Act; 8) violation of the Texas Deceptive Trade practices Act; and 9) breach of contract. Overall, Plaintiff's Complaint alleges Defendant Merchants' publishing of confidential and proprietary information has caused damages to its reputation, including being ostracized in the bonding/surety market, and a potential inability to obtain surety bonds from other suppliers in the industry. Defendant Merchants' instant motion seeks to dismiss eight of the nine causes of action in the Complaint filed by Plaintiff. Rec. Doc. 6.

**LAW AND ANALYSIS**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party.

*Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)(quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009))(internal quotation marks omitted). The Supreme Court in *Iqbal* explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950. First, courts must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Legal conclusions "must be supported by factual allegations." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949.

Upon identifying the well-pleaded factual allegations, courts "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id*. at 1950. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. This is a "context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." *Id*. The plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. This Court analyzes each of the eight causes of action Defendant Merchants seeks to dismiss accordingly.

## COUNT 2 - Violation of Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA")

Plaintiff alleges that Defendant Merchants' conduct in using and disseminating the Frischhertz Documentation during the Training, and concealment of said disclosure constitutes deceptive and fraudulent business practices under LUTPA. Rec. Doc. 1 at 8. Defendant Merchants' contends that as an insurance company subject to regulation by the Iowa and Louisiana Commissioners of Insurance it is exempt from liability under LUTPA. Rec. Doc. 6-5 at 4-5.

LUTPA, or Louisiana Statute § 51:1401-1418, declares unlawful and provides a right of action for "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Stat. Ann. § 51:1405. However, "the statute shall not apply to actions or transactions subject to the jurisdiction of certain state regulatory bodies or commissioners, including the insurance commissioner."[1] *Alarcon v. Aetna Cas. &*

---

[1] La. Stat. § 51:1406 provides that the provisions shall **not** apply to:
(1) Any federally insured financial institution, its subsidiaries, and affiliates or any licensee of the Office of Financial Institutions, its subsidiaries, and affiliates or actions or transactions subject to the jurisdiction of the Louisiana Public Service Commission or

*Sur. Co.*, 538 So. 2d 696, 700 (La. App. 5 Cir. 1989). "A trade practice is 'deceptive' for purposes of LUTPA when it amounts to fraud, deceit, or misrepresentation." *Mixon v. Iberia Surgical, L.L.C.*, 956 So. 2d 76, 80 (La.App. 3 Cir. 2007). Defendant Merchants contends that as an insurer, it is exempt from liability under LUTPA and is subject to the insurance commissioner's regulation. Rec. Doc. 6-5 at 5.

In *Group Life & Health Insurance Co.*, the Supreme Court was presented with the issue of whether or not certain "pharmacy agreements" were in the "business of insurance" within the meaning of the McCarran-Ferguson Act.[2] *Grp. Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205 (1979). The Supreme Court noted the importance of distinguishing between the business of insurance and the business of insurers. It noted that the statutory exemption was for "the business of insurance." *Id*. at 211. As a result, the primary element that distinguishes the business of insurance from other business arrangements is the involvement of any underwriting or spreading of risk. Ultimately, the Supreme Court held that the pharmacy agreements did not involve any underwriting or spreading

---

other public utility regulatory body, the commissioner of financial institutions, the insurance commissioner, the financial institutions and insurance regulators of other states, or federal banking regulators who possess authority to regulate unfair or deceptive trade practices. (Emphasis added).

[2] 15 U.S.C. §§ 1011–1015.

of risk, but were "merely arrangements for the purchase of goods and services by Blue Shield" and "thus legally indistinguishable from countless other business arrangements that may be made by insurance companies." *Grp. Life & Health Ins. Co.,* 440 U.S. at 214-15. The Fifth Circuit considers three factors determining whether an act is part of the "business of insurance": "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." *Wiley v. Sec. & Exch. Comm'n*, 663 F. App'x 353, 359 (5th Cir. 2016).

Here, Plaintiff's relationship with Defendant Merchants was not within the business of insurance. While the Frischhertz Documentation was originally provided to Defendant Merchants by way of Eustis for the purposes of obtaining a surety, Defendant Merchants did not ultimately obtain said surety for Plaintiff. In fact. Defendant Merchants repeatedly denies that Plaintiff was ever its "customer." Rec. Doc. 6. Rather, the alleged dissemination was a decision made by Defendant Merchants for the purposes of the Training; wholly unrelated to any business of insurance services with Plaintiff. The actions challenged by Plaintiff have nothing to do with transferring or spreading a policyholder's risk, are not an integral part of an insurance policy relationship between

7

Defendant Merchants and Plaintiff, and is not limited to entities within the insurance industry.

Defendant Merchants further argues that Plaintiff's claims are preempted under LUTPA and that Plaintiff lacks standing for its failure to allege facts establishing an "ascertainable loss of money or property." However, taking Plaintiff's allegations of loss and damages suffered as true the Complaint sufficiently states a claim under LUTPA at this stage of the litigation. *See* Rec. Doc. 1 at 5, 9. Finally, the one year period in La. R.S. 51:1409(E) is a peremptive period; however, it does not begin to run until a continuing violation ceases. *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780, 792 (E.D. La. 2012) citing *Tubos de Acero de Mexico, S.A.* 292 F.3d at 481–82. Plaintiff's allegations of Defendant Merchants' use of Plaintiff's information in subsequent trainings/violations in other states is sufficient to survive the instant motion to dismiss.

**COUNT 3 - Negligent Misrepresentation[3]**

In its third cause of action Plaintiff alleges negligent misrepresentation where Defendant Merchants owed it a duty of care to provide security and confidentiality with regards to the Frischhertz Documentation and breached that duty when it disseminated the Plaintiff's information during the Training, and

---

[3] Plaintiff's Response in Opposition (Rec. Doc. 8) cites Fifth Circuit case law as a result this Court infers that Plaintiff's claim is pursuant to Louisiana law.

8

possibly at other alleged subsequent trainings. Rec. Doc. 1 at 9-10. Plaintiff maintains that Defendant Merchants advertised and represented to the public that it would provide confidentiality and security. *Id*. Further, Plaintiff asserts that it relied upon these representation and Defendant Merchants knew said representations were untrue or had reckless disregard for the veracity of its statements. *Id*.

To properly allege a claim for negligent misrepresentation in Louisiana: (1) there must be a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of that duty, which can occur by omission as well as by affirmative misrepresentation; and (3) the breach must have caused damages to the plaintiff based on the plaintiff's reasonable reliance on the misrepresentation. *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 418 (5th Cir. 2008). In negligent misrepresentation cases, Louisiana courts have held that even when there is no initial duty, voluntarily disclosure assumes a duty to insure the information is correct. *Id.* at 419 (5th Cir. 2008).

Without specificity, Plaintiff vaguely asserts that Defendant Merchants made certain public representations, including on its website, to "ascribe to a commitment to maintain the confidentiality of the personal information which it obtains." Rec. Doc. 1 at 3. However—short of any allegations that Defendant Merchants is not committed to maintaining confidentiality—the

9

information Plaintiff points to does not rise to the level of misrepresentations of fact under Louisiana law. Plaintiff fails to sufficiently state a claim for negligent misrepresentation.

**COUNT 4 – Negligent Hiring**

Plaintiff's next cause of action is for negligent hiring. Because Plaintiff's Complaint continually fails to specify what state and statute pursuant to which Plaintiff alleges its claim, we analyze the allegations under Iowa law as Defendant Merchants is an Iowa corporation organized under the laws of the State of Iowa.

The State of Iowa follows the Second Restatement's recitation of the requirements to assert a claim for negligent hiring. *See Godar v. Edwards*, 588 N.W.2d 701, 708 (Iowa 1999). Consequently, in order for Plaintiff to recover based on a negligent hiring claim, the following must be proven:

> (1) that the employer knew, or in the exercise of ordinary care should have known, of its employee's unfitness at the time of hiring;
> (2) that through the negligent hiring of the employee, the employee's incompetence, unfitness, or dangerous characteristics proximately caused the resulting injuries; and
> (3) that there is some employment or agency relationship between the tortfeasor and the defendant employer.

*Godar v. Edwards*, 588 N.W.2d 701, 708-09 (Iowa 1999). *See* Restatement (Second) of Agency § 213 (1957). Plaintiff offers no evidence that Defendant Merchants knew or should have known of its

employee's unfitness or dangerous characteristics at the time of hiring. Further, the injuries alleged by Plaintiff are not the type of injuries to an individual or the public contemplated by recovery for negligent hiring. *See generally* Restatement (Second) of Agency § 213 (1957); *see also* 27 Am.Jur.2d *Employment Relationship* § 473, at 913 (1996) ("The tort of negligent hiring is based on the principle that a person conducting an activity through employees is subject to liability for harm resulting from conduct in the employment of improper persons involving risk of harm to others."). Accordingly, Plaintiff's claim for negligent hiring is dismissed.

**COUNT 5 – Breach of Duty of Reasonable Care, Diligence, & Judgment**

Plaintiff's fifth cause of action alleges that as an insurance producer under Iowa law, Defendant Merchants owed Plaintiff a duty of reasonable care, diligence, and judgment and that it breached that duty. Rec. Doc. 1 at 11. Under Iowa Code, an "insurance producer means a person required to be licensed under the laws of this state to sell, solicit, or negotiate insurance." Iowa Code § 522B.1 (2014). However, as already delineated *supra*, the allegations by Plaintiff against Defendant Merchants were not within the "business of insurance." Aside from the preliminary surety application, it is undisputed that Plaintiff never received

insurance services by Defendant Merchants. Consequently, Plaintiff lacks standing to assert a claim under § 522B.1(7).[4]

**COUNT 6 – Misappropriation under Iowa Uniform Trade Secrets Act ("IUTSA")**

Next, Plaintiff's Complaint alleges the dissemination of the Frischhertz Documentation during the Training was a misappropriation of trade secrets under the IUTSA, or Iowa Code § 550.2(3). Rec. Doc. 1 at 12. "The elements of a claim of misappropriation of trade secret under IUTSA and Iowa common law are practically indistinguishable." *Seneca Companies, Inc. v. Becker*, 134 F. Supp. 3d 1148, 1152 (S.D. Iowa 2015), citing *Lemmon v. Hendrickson,* 559 N.W.2d 278, 279 (Iowa 1997). They are: "(1) existence of a trade secret, (2) acquisition of the secret as a result of a confidential relationship, and (3) unauthorized use of the secret." *Seneca Companies, Inc.*, 134 F. Supp. 3d at 1152-53. Additionally, "information may also fall within the definition of a trade secret, including such matters as maintenance of data on customer lists and needs, source of supplies, confidential costs, price data and figures." *US West Commc'ns Inc. v. Office of Consumer Advocate,* 498 N.W.2d 711, 714 (Iowa 1993).

---

[4] Iowa Code Ann. § 522B.11 provides that: "[a]n insurance producer owes any duties and responsibilities referred to in this subsection only to the policy owner, a person in privity of contract with the insurance producer, and the principal in an agency relationship with the insurance producer."

Plaintiff alleges that the Frischhertz Documentation falls within the definition of a trade secret, that Defendant Merchants received such information based on a confidential submission, and that the dissemination was unauthorized. Defendant Merchants' arguments, including that Eustis disclosed the Frischhertz Documentation without any contractual obligation of confidentiality is unconvincing that Defendant Merchants' was unaware of the confidentiality of the Frischhertz Documentation upon its receipt of the documents from Eustis. Rec. Doc. 6-5 at 18. Accordingly, Plaintiff's allegations satisfy the requirements to establish a *prima facie* case for misappropriation of trade secrets under Iowa law.

## COUNT 7 – Misappropriation under Texas Uniform Trade Secrets Act ("TUTSA")

Similar to its sixth cause of action, Plaintiff also alleges misappropriation of trade secrets under Texas law. Rec. Doc. 1 at 19. Similar to the analysis above in Count 6, misappropriation of trade secrets under Texas law is established by a showing that: "(a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret without authorization from the plaintiff." *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013). However, Defendant Merchants contends that Plaintiff's claim should fail because

Plaintiff makes no allegations that any injuries or misappropriation occurred in Texas. Rec. Doc. 6-5 at 19-20. Nevertheless, Plaintiff's Complaint alleges that:

> Upon information and belief, the Frischhertz Electric's sensitive, confidential, and proprietary financial documentation was used by Merchants Bonding for purposes other than obtaining the surety . . . and the Frischhertz Electric documents were used and disseminated for non-surety purposes after October 9, 2016, and were ultimately utilized or distributed in Louisiana, Texas, Iowa and other states.

Rec. Doc. 1 at 4. As a result, and taking Plaintiff's allegations to be true at this stage of the litigation, Plaintiff's Complaint sufficiently states a claim for misappropriation of trade secrets under TUTSA at this stage.

**COUNT 8 – Violation of Texas Deceptive Trade Practices Act ("DTPA")**

Analogous to its claim under LUTPA, Plaintiff's Complaint alleges a violation of DTPA. Specifically, Plaintiff argues that Defendant Merchants' "concealment, suppression, or omission of material facts as alleged herein constitute unfair, deceptive, and fraudulent business practices within the meaning of the DTPA, Tex. BUS. & COM. CODE 17.46(a)." Rec. Doc. 1 at 15. The DTPA, Section 17.46(a) provides:

> (a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code.

Tex. Bus. & Com. Code § 17.46 (2017). The elements of a claim under the DTPA are that: 1) the defendant engaged in an act or practice that violated section 17.46(b) of the Texas Business and Commerce Code; 2) the plaintiff relied on the act or practice to his or her detriment; and 3) the defendant's act or practice was a producing cause of actual damages. *Allstate Ins. Co. v. Watson,* 876 S.W.2d 145, 147 (Tex.1994).

Here, Plaintiff alleges that Defendant Merchants violated Tex. Bus. & Com. Code Ann. § 17.46 by "representing that goods or services are of a particular standard, quality, or grade or that good are of a particular style or model, if they are of another." Rec. Doc. 1 at 15. The good and/or service that forms the basis of Plaintiff's Complaint is the "quality and/or effectuation of its processes and procedures concerning the security, confidentiality, and privacy of customer data." *Id*. at 16. Plaintiff's Complaint further alleges that Plaintiff was harmed by its reliance upon Defendant Merchants' representations and that Defendant Merchants' subsequent dissemination of the Frischhertz Documentation was the cause of actual damages. Rec. Doc. 1 at 14-17. Accordingly, Plaintiff sufficiently states a claim under DTPA.

**COUNT 9 – Breach of Contract**

The last of the allegations by Plaintiff against Defendant Merchants is for breach of contract.[5] Rec. Doc. 1 at 17. Plaintiff alleges that it is a third-party beneficiary under an agreement between Eustis and Defendant Merchants as a *stipulation pour autrui*. *Id*. Further, Plaintiff alleges that it relied upon the terms of confidentiality as set out in the agreement between Eustis and Defendant Merchants, and Defendant Merchants violated the agreement when it disseminated the Frischhertz Documentation at the Training. *Id*.

"Under Louisiana law, three factors determine whether a stipulation *pour autrui* is present: (1) The stipulation for a third party must be manifestly clear; (2) There must be certainty as to the benefit owed the third party; and (3) The benefit must not be a mere incident of the contract between the promisor and the promise." *Smith Marine Towing Corp. v. EPL Oil & Gas, Inc.*, No. CV 15-5489, 2016 WL 1660211, at *4 (E.D. La. Apr. 27, 2016). By the terms of the agency agreement, Eustis was appointed as an agent for the purposes of procuring applications for bonds and policies and delivering the bonds and policies on behalf of Defendant Merchants. Rec. Doc. 6-4. While it is arguable that, as a surety applicant, Plaintiff was a contemplated third-party beneficiary of

---

[5] Plaintiff continually fails to specify which state law upon which it brings its claims. Therefore, we analyze this claim for breach of contract pursuant to Louisiana law.

16

the agency agreement between Eustis and Defendant Merchants, there is no confidentiality provision included in the agreement. Rec. Doc. 6-4. Therefore, there is no certainty as to the benefit owed Plaintiff under the terms of the agreement. In fact, the benefit that Plaintiff seeks is not a provision within the agency agreement. This further negates Plaintiff's allegations that it relied upon the terms of confidentiality in the agreement, as there are none. Consequently, Plaintiff's claim for breach of contract fails as there can be no contractural breach of confidentiality where the agreement does not contain a confidentiality provision.

New Orleans, Louisiana, this 7th day of May, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE